JOSEPH D. GIBSON v. STATE OF ARKANSAS

5727                                        482 S.W. 2d 98

Opinion delivered July 3, 1972

*Eugene Coffelt,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Joseph D. Gibson and A. C. Thrasher were convicted in the Benton County Circuit Court on the charges of burglary and grand larceny. They were sentenced to a minimum of one year on the charge of grand larceny and two years on the charge of burglary, the sentences to run concurrently. The sentence of A. C. Thrasher was suspended conditioned on good behavior and Joseph D. Gibson has appealed. He relies on the following points for reversal.

"The closing argument of the prosecuting attorney contains prejudicial remarks and contains reference to facts not contained in the record.

The lower court erred in allowing the testimony of Bill Vault when his name was not furnished by the prosecuting attorney as a witness in his response to the motion for a bill of particulars.

The form of the verdict submitted to the jury was improper."

The facts as gathered from the evidence of record and as abstracted by the state are to the effect that Mr. Bill Rutherford, an employee of Tatum Motor Company, drove his pickup truck to work at the Tatum Motor Company near Siloam Springs in Benton County. At the close of the working day on May 1, 1971, Rutherford went with his wife in her automobile to visit relatives and he left his pickup truck parked in front of the Tatum Motor Company office. Upon concluding the social visit after dark, he returned with his wife to the office building for the purpose of obtaining his pickup truck and driving it home and he found that the adding machine from the Tatum Motor Company office had been removed from the office and placed in the back of his pickup truck. He noticed that the door to the company office had been opened and he positively identified Thrasher attempting to hide behind the wheel of a nearby tractor. He said that when he accosted Thrasher and inquired as to what he was doing there, Thrasher ran east toward

Cobbs Hatchery which was about 200 yards distance, and a second individual, whom he identified as Gibson, came out from under a nearby trailer and also ran toward the hatchery. Upon further investigation Mr. Rutherford found that the company office door had been pried open; that some wires had been removed from the trailer under which Gibson was hiding and that the wires had been used in wiring around the ignition switch on his pickup truck in which the adding machine was found. Mr. Rutherford called the police officers and Gibson and Thrasher were apprehended in their automobile parked on the hatchery parking lot.

The evidence was to the effect that the battery on the automobile occupied by Gibson and Thrasher had run down and would not start the motor. It had been raining on the night in question and Gibson's and Thrasher's clothes were wet from the waist down. According to Rutherford and the arresting officers, both Thrasher and Gibson ran through tall wet fescue grass when leaving the scene of the burglary and fescue or grass seed were clinging to Gibson's wet trouser legs.

Mr. Thrasher testified in his and Gibson's defense. He testified that he and Gibson were brothers and lived in Conway, Arkansas. He said that they had been in Kansas City and were on their way home *via* Gravette on the night of May 1, 1971, and that prior to reaching the parking lot where they were apprehended, they were having alternator trouble on their automobile and the battery had run completely down. He said that when they approached the intersection in the highway adjacent to the hatchery parking lot where they were apprehended, the automobile completely stopped running; that it was raining hard and they got out of the automobile and pushed the vehicle from the highway into the parking lot and in doing so got soaking wet. He said that they decided to wait until morning to get their battery recharged; that after parking in the hatchery parking lot they smoked a cigarette, talked a little while and then went to sleep. He said that they were asleep when they were aroused by the officers and that they knew nothing about a burglary or larceny committed at the Tatum Motor Company. He denied that he peered from behind a

tractor wheel and tire at Mr. Rutherford and denied that he knew anything at all about the burglary or that he and Gibson had anything at all to do with it.

We find no merit to appellant's first point. Mr. Rutherford testified that both the accused ran through some high and wet fescue grass in leaving the scene of the burglary and the arresting officers testified that a trail led through some high fescue grass from the scene of the burglary toward the hatchery parking lot. As above stated, Thrasher explained their wet clothing by the fact that they had to push the automobile from the highway into the parking lot while it was raining. The officers testified that their clothes were not only wet from the waist down but had grass seed clinging to the wet clothes. In his argument to the jury the prosecuting attorney pointed out the testimony for the state and then reminding the jury of Thrasher's testimony stated:

"But there's nothing to back up his story. There's nothing to say how did he get so wet from the knees down. How did Gibson get fescue seed on his pants? They were there. They committed the crime, and therefore I ask you as members of this jury panel to return a verdict of guilty and fix appropriate sentence.

\* \* \*

Mr. Coffelt doesn't deny the seed on the pants. It was never raised. No, it's uncontroverted. He doesn't raise it as a defense argument either, because it cannot be denied. The seeds were there. They were wet. They were fresh. And that fescue was growing in that field over there on the other side of Tatum Motor Company. Mr. Gibson was there. Mr. Thrasher was there. They're guilty beyond a reasonable doubt."

In *Crow* v. *State,* 190 Ark. 222, 79 S.W. 2d 75, we said:

"It has long been established doctrine in this State that a wide range of discretion is allowed circuit judges in dealing with the arguments of counsel before juries; this because they can best determine at

the time the effect of unwarranted arguments. True, this discretion is not an arbitrary one, but may be reviewed in its exercise if abused."

In *Shank* v. *State,* 189 Ark. 243, 72 S.W. 2d 519, we distinguished such statements as : "He is guilty. I know it, and you know it, and the defendant knows it," from such statements as in *Hughes* v. *State,* 154 Ark. 621, 243 S.W. 70, and *Sanders* v. *State,* 175 Ark. 61, 296 S.W. 70, where the prosecuting attorney stated that the defendant was guilty, because he (the prosecuting attorney) had information that no one else had.

As to appellant's second point, Mr. Rutherford was unable to testify positively as to the value of the adding machine taken from the building and the appellant objected to testimony on this point from any witness other than witnesses whose names had been furnished to the appellant in response to the appellant's motion for a bill of particulars. The trial court overruled the motion on the basis that the motion for a bill of particulars cannot be used as a discovery vehicle, and for the further reason that the court was of the opinion the defendant was not surprised or prejudiced by allowing proof by an additional witness as to the value of the item allegedly taken.

As to the procedure on this point, the state called Mr. W. C. "Bill" Vault, the general manager of Tatum Motor Company, who described the adding machine and testified that the company purchased the machine approximately six months previously for $100, and that as of May 1, 1971, it was still worth $100. Although the appellant objected generally to anyone testifying as to the value of the machine whose name had not been furnished to him in advance, he made no direct objection to Mr. Vault's testimony that the machine was purchased for $100 and was worth approximately that much at the time the testimony was elicited from Mr. Vault. When Mr. Vault was asked the second time what the machine was worth as of May 1, the appellant objected because proper foundation had not been laid and his objection was overruled. The failure by the state to supply a defendant with the names of its witnesses does not affect the validity of the trial unless the accused can show in some way he had

been misled to his prejudice and has had no opportunity to meet the testimony given by the witness. See *Lomax v. State*, 248 Ark. 534, 452 S.W. 2d 646; *Thomas v. State*, 161 Ark. 644, 257 S.W. 376. Although the appellant argues that he was surprised by this testimony, he made no motion for a continuance. See *Lomax v. State, supra.*

The appellant also contends that the prosecuting attorney's closing remarks were prejudicial when he argued that investigating Officer James Pearson testified:

> ". . .that he went out and looked across this field which he could see the path that went along this chain-link fence on the west side of the property. *He could see how the path went behind the property and across Highway 59 and in a direct line up to the parking lot of Cobb's Hatchery.*"
> (appellant's emphasis).

What the witness actually testified to on redirect examination was:

> ". . .there was grass knocked down immediately over the fence and then it headed east and I didn't walk back through on across the field.
> Q. Headed east towards where?
> A. Cobbs Hatchery."

On recross examination this witness testified that the trail led also toward the filling station and the highway.

In *Adams v. State*, 176 Ark. 916, 5 S.W. 2d 946, we said:

> ". . .this court does not reverse for the mere expression of opinion of counsel in their argument before juries, unless so flagrant as to arouse passion and prejudice, made for that purpose, and necessarily having that effect."

And in *Willis v. State*, 220 Ark. 965, 251 S.W. 2d 816, we said:

> "It is perfectly proper for counsel to argue all inferences reasonably deducible from the evidence."

In the case at bar, we are of the opinion that the evidence justified the argument made by the prosecuting attorney.

The appellant's last contention is that the forms of verdict submitted to the jury were improper. Both defendants were joined in the trial of this case and the forms of the verdict were:

> "We, the jury, find the defendants, A. C. Thrasher and Joseph D. Gibson, guilty of burglary and fix their punishment at ————.

> We, the jury, find the defendants, A. C. Thrasher and Joseph D. Gibson, not guilty of burglary.

> We, the jury, find the defendants, A. C. Thrasher and Joseph D. Gibson, guilty of grand larceny and fix their punishment at ————.

> We, the jury, find the defendants, A. C. Threasher and Joseph D. Gibson, not guilty of grand larceny."

We find no merit in the appellant's contention on this point. Both defendants were jointly charged with burglary and grand larceny arising out of the same act. They were being tried together and all the evidence applied to one of them as forcefully as it applied to the other. The appellant did not object to the forms of the verdict and did not make known to the court what action he desired to court to take in connection with the forms of verdict.

The judgment is affirmed.