Mattie Louise HAMMOND v. STATE of Arkansas

CR 73-74                                498 S.W. 2d 652

Opinion delivered September 10, 1973

*Walker, Kaplan & Mays* and *A. T. Goodloe,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

Frank Holt, Justice. The appellant was convicted by the trial court, sitting as a jury, of using abusive language in violation of Ark. Stat. Ann. § 41-1412 (1964 Repl.) and violating Ark. Stat. Ann. § 41-2801 (1964 Repl.) by resisting arrest. Her punishment was assessed at $50 and

costs and 30 days in jail on each offense with the jail sentences suspended. Appellant first attacks the constitutionality of § 41-1412 (breach of peace statute) as being violative of the federal First and Fourteenth Amendments.

Appellant asserts that the statute is overbroad, vague, unconstitutional in its application and cannot be given a narrow construction to limit abusive language to "fighting words." § 41-1412 reads in pertinent part as follows:

> "If any person shall make use of any profane, violent, vulgar, abusive or insulting language toward or about any other person in his presence or hearing, which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault, shall be deemed guilty of a breach of the peace...."

Appellant's contentions as to the constitutionality of this statute were determined adversely in our very recent case of *Lucas* v. *State,* 254 Ark. 584, 494 S.W. 2d 705 (1973). There we considered various federal cases including *Gooding, Warden* v. *Wilson,* 405 U.S. 518 (1972), upon which appellant also relies. In *Lucas,* in upholding the constitutionality of our breach of the peace statute, we construed and restricted its application as to abusive language to "fighting words" and, therefore, our statute met the standard required in *Chaplinsky* v. *New Hampshire,* 315 U.S. 568 (1941), from which we quoted at length. There it was held that not all speech is constitutionally protected and included among these categories are "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Fighting words must be of such a nature as "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." *Chaplinsky* v. *New Hampshire, supra.* Appellant admits that the right of free speech is not an absolute guarantee by our federal First Amendment. *Schenck* v. *United States,* 249 U.S. 47 (1919), and *Whitney* v. *California,* 274 U.S. 357 (1927).

It appears clear from Chaplinsky that any statute punishing or regulating the use of abusive language must be limited to fighting words. If the statute appears vague

and unclear on its face, it can be preserved by the courts when restricted in its application to "fighting words" as defined by *Chaplinsky*. In other words, only that vile or abusive language which arouses anger to the extent likely to cause retaliation—fighting words—are within the meaning of the statute. With this standard or test in mind, we now turn to the evidence in this case.

A local policeman went to appellant's residence for the purpose of arresting a relative of appellant on a charge of possessing stolen property. When the officer attempted to effect the arrest, the appellant called the officer "pig, son-of-a-bitch, mother f-----." She also called him "a jive white ass punk." She was asked to "hush" and be "quiet;" however, she continued to repeat the epithets after another officer arrived. Appellant only denied that she called him a pig and son-of-a-bitch. She "guessed" that it was her purpose to make the officer "mad."

It is unnecessary to show or prove that abusive language caused a fight—it is only necessary that the abusive words were likely to cause a fight or retaliation. Furthermore, the court can take judicial notice that abusive language used by the addressor constitutes fighting words. In *Chaplinsky, supra,* the court recognized that:

"Argument is unnecessary to demonstrate that the appellations 'damned racketeer' and 'damned Fascist' are epithets likely to provoke the average person to retaliation, and thereby cause a breach of the peace."

Likewise, we are of the view that argument is unnecessary to demonstrate the language or epithets used by appellant in the case at bar were likely to provoke an average person to retaliate and cause a breach of the peace. We cannot conceive that the First Amendment, which guarantees freedom of speech, was formulated with the view that such insulting, vulgar and inflamatory language as used by the appellant in the case at bar, supposedly to arouse anger, was envisioned as being within the bounds of freedom of speech.

Appellant next asserts that the evidence as a matter of law is insufficient to support the finding by the trial court. Without reiterating the language used, we think

the evidence amply sufficient and substantial to support the trial court's finding that the appellant violated § 41-1412 (breach of the peace). As to § 41-2801 (resisting arrest), the state adduced evidence that when the officer attempted to arrest appellant she resisted, struck him with a phone, and it became necessary for the officer to have the assistance of a fellow officer. This evidence is substantial and we affirm whenever there is any substantial evidence to support the trial court's finding.

Affirmed.