The Honorable Monty Davenport State Representative 644 MC 4003 Yellville, AR 73687-9340
Dear Representative Davenport:
I am writing in response to your request for an opinion on the following:
 1) Can a subscription service fire department charge for their services when they respond to a 911 medical emergency on non-members property?
 2) If the answer to question #1 is yes, who is responsible for the payment of these services? The non-member who may not have requested the service or the person requesting the service?
 3) Can the fire department charge for the services provided at vehicle accidents?
 4) Is a volunteer fire department required to respond to 911 medical emergencies outside their district or coverage area?
RESPONSE
At least two separate statutes govern your first question. In my opinion, as a general matter, volunteer fire departments organized as nonprofit corporations with their boundaries set pursuant to A.C.A. § 14-20-108 (Supp. 2007) are not authorized to charge for their services when responding to a 911 medical emergency call on a nonmember's property. If a volunteer fire department is utilizing fire services agreements pursuant to A.C.A. §§ 14-272-301 through-304 *Page 2 
(Supp. 2007), however, the department may charge a "nonbeneficiary" who is provided services in response to a 911 medical emergency call, if the services are delineated in the fire services agreements. In my opinion, your second question is therefore generally moot, except to the extent the department is employing "services agreements" under A.C.A. §14-272-301 — in that event A.C.A. § 14-272-303(b)(1) provides that a "nonbeneficiary" receiving the services is responsible for payment. With respect to Question Three, in my opinion, a volunteer fire department not utilizing "services agreements" is not authorized to charge for services rendered at motor vehicle accidents that do not involve a fire. With respect to a department that is utilizing "services agreements," if the services provided are delineated in the fire services agreements, beneficiaries will have paid for the services through annual fees and "nonbeneficiaries" may be charged for the services provided pursuant to A.C.A. § 14-272-303. In my opinion, with respect to Question Four, there is no statutory duty for a volunteer fire department to respond to a 911 medical emergency call outside of its coverage area.
Question One: Can a subscription service fire department charge for theirservices when they respond to a 911 medical emergency on non-membersproperty?
In my opinion, the answer is generally "no," unless the volunteer fire department utilizes fire services agreements pursuant to A.C.A. §§14-272-301 through-304. In that event the volunteer fire department may charge "nonbeneficiaries" for providing "firefighting services," which may include medical care, pursuant to A.C.A. § 14-272-303(b). Persons residing outside the boundaries of the fire department are likely not included in the definition of "nonbeneficiaries," however.
I assume that your phrase "subscription service fire department" refers to a volunteer fire department organized as a private nonprofit corporation pursuant to either the Arkansas Nonprofit Corporation Act, A.C.A. §§ 4-28-201 through-206 and §§ 4-28-209 through-224, or the Arkansas Nonprofit Corporation Act of 1993, A.C.A. §§ 4-33-101 through-1707 (Repl. 2001 Supp. 2007). Such departments receive fees or subscriptions from property owners within the boundaries determined by a quorum court pursuant to A.C.A. §§ 14-20-108(a) — (c). See, e.g., Op. Att'y Gen. 2004-224
(noting that A.C.A. § 14-20-108 addresses "dues that are charged by volunteer fire departments, i.e., fire departments organized as so-called `subscription' fire departments"). Under that statute, such departments may request that their dues be collected by the county along with real property taxes, assuming *Page 3 
that the issue is approved by a favorable vote at the election described in the statute.
With respect to what fees or charges may be recovered from nonmembers, A.C.A. § 20-22-901 (Supp. 2007) generally addresses the duties and entitlements of "volunteer fire departments," such as the one described above. As noted by one of my predecessors, a nonprofit fire department is expressly authorized to respond to fires on nonmembers property and receive compensation for such services. Op. Att'y Gen. 96-114 (citing A.C.A. § 20-22-901). Arkansas Code Annotated § 20-22-901 provides in pertinent part:
 (a)(1) Upon receipt of a report of an uncontrolled fire or a 911 or other emergency call reporting a fire, it shall be the duty of volunteer fire departments operating within the State of Arkansas to respond to, attempt to control, and put out all fires
occurring within their respective districts involving any real or personal property, whether that property is owned by members of the fire district.
 * * * (b)(1) If the property is owned by a nonmember of the fire district, then the volunteer fire department shall be entitled to recover from the nonmember property owner the reasonable value of its services not to exceed the fair market value of the services rendered.
 (2) A claim for services in responding to a fire involving only personal property shall be allowed only for personal property of nonmembers, and the claimed amount shall not exceed five hundred dollars ($500).
(Emphasis added). The department is, therefore, authorized to charge nonmembers for responding to a "report of an uncontrolled fire or a 911 or other emergency call reporting a fire." Id. at (a)(1). The authorization to recover fees from nonmembers in A.C.A. § 20-22-901(b) applies solely when the department responds according to A.C.A. §20-22-901(a). To fully answer your question, it must be determined whether a 911 medical emergency falls within the ambit of this statute. *Page 4 
The Arkansas Supreme Court has stated with regard to statutory interpretation, as follows:
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. Weiss v. McFadden, 353 Ark. 868, 120 S.W.3d 545 (2003). We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n, 342 Ark. 591, 29 S.W.3d 730 (2000). When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Weiss v. McFadden, supra. When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Id.
Macsteel, Parnell Consultants v. Ar. Ok. Gas Corp., 363 Ark. 22,210 S.W.3d 878 (2005); see also Ops. Att'y Gen. 2005-072 2004-339. A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. ACW, Inc. v. Weiss,329 Ark. 302, 947 S.W.2d 770 (1997); Maddox v. City of Fort Smith,369 Ark. 143, S.W. 3d (2007).
The court has also held that "it does not engage in interpretations that defy common sense and produce absurd results," and that "in construing statutes . . . we look to the language under discussion in the context of the statute as a whole." Green v. Mills, 339 Ark. 200, 205, 4 S.W.3d (1999) (citing Haase v. Starnes, 323 Ark. 262, 915 S.W.2d 675 (1996)); Stewardv. McDonald, 330 Ark. 837, 958 S.W.2d 297 (1997); and Burcham v. City ofVan Buren, 330 Ark. 451, 954 S.W.2d 266 (1997). In construing any statute, the court will place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect derived from the whole. Short v. State, 349 Ark. 492, 495, 79 S.W.3d 313 (2002).
In my opinion, the phrase "report of an uncontrolled fire or a 911 or other emergency call reporting a fire" in A.C.A. § 20-22-901 is ambiguous. It is unclear under this language whether any 911 emergency call or only a 911 emergency call *Page 5 
reporting a fire is intended. When the statute is viewed as a whole, in my opinion it becomes apparent that the statute is specifically addressing a volunteer fire department's response to reports of fires. The later language in A.C.A. § 20-22-901(a)(1) describing the actions a volunteer fire department is to take in response to the call states the department is "to respond to, attempt to control, and put out any fires within their respective districts involving any real or personal property." In my opinion both the phrase "911" and "or other emergency call" is modified by "reporting a fire." This interpretation is consistent with the balance of the language in the subsection that details actions only in response to a fire. Therefore, if a 911 emergency call does not report a fire, there is no authority under A.C.A. § 20-22-901
for a volunteer fire department to recover any fees from a nonmember.
I will note the potentially conflicting language in A.C.A. § 23-88-102. Specifically, A.C.A. § 23-88-102(a) (Supp. 2007) states:
 The amount charged by a volunteer fire department for the cost of its services to a fire on or an emergency call concerning the property of a nonmember within its district shall not exceed an amount equal to the fair market value of the service rendered, except that a claim for services in responding to a fire involving only personal property shall be allowed only for personal property of nonmembers, and the claimed amount shall not exceed five hundred dollars ($500).
(Emphasis added). In my opinion, this statute does not control the issue you have raised. Initially, I note that both A.C.A. § 23-88-102 and §20-22-901 were enacted by the Act 836 of 1987. Furthermore, the General Assembly has repeatedly amended both code sections through the same act.See Act 581 of 2007; and Act 1150 of 1997. Furthermore, it is not clear that A.C.A. § 23-88-102 would cover emergency medical services. The plain and ordinary language of the statute requires that it address "an emergency call concerning the property of a nonmember." Id. at (a). By its plain and ordinary language, therefore, A.C.A. § 23-88-102 does not purport to give a volunteer fire department the authority to make a claim for reimbursement for medical services.
Complete resolution of your first question concerning reimbursement for medical services on non-members property however, also requires reference to another statutory scheme. In 2001, the General Assembly created a supplementary law to provide volunteer fire departments an additional choice in financing operations. *Page 6 See A.C.A. §§ 14-272-301 through-304. This subchapter of the Arkansas Code allows a volunteer fire department to execute "fire services agreements" detailing the annual charges to "beneficiaries" and the services provided. Pursuant to A.C.A. § 14-272-303, a volunteer fire department is authorized to charge for providing "firefighting services" to a "nonbeneficiary." This section is broad enough to include the provision of life saving services in response to a 911 medical emergency call. As an initial matter, A.C.A. § 14-272-301 defines the following terms:
 (1) "Beneficiaries" means those persons or entities who have executed services agreements and who have paid and remain current in the payment of services availability fees to a fire department or fire departments that are recognized as providing firefighting services to the beneficiaries' property;
 * * * (4) "Firefighting services" means the provision of all services of whatever nature which might be utilized in connection with the extinguishing of fires and the preservation of life and real and personal property;
 * * * (6) "Nonbeneficiaries" means those persons or entities who have not executed a services agreement or who have not paid or are not current in the payment of services availability fees to a fire department or fire departments recognized as being capable of providing firefighting services to the property of the nonbeneficiaries;
Id. (emphasis added). Additionally, the General Assembly provided the following pertinent authority:
 (b)(1) Should a fire department provide firefighting services to a nonbeneficiary, then the nonbeneficiary shall pay to the fire department a sum not to exceed five thousand dollars ($5,000) as consideration for the provision of firefighting services, with its being *Page 7 
understood that the exact amount of the sum shall be specified by written resolution of the fire department in the services agreement.
A.C.A. § 14-272-303.
The General Assembly specifically noted the intent that this statute be supplementary to existing authority and supersede those statutory provisions that were expressly contradictory. Act 1725 of 2001, § 6.[1]
The plain and ordinary language defining "firefighting services" in A.C.A. § 14-272-301 includes services related to the protection of life and personal property and not merely the extinguishing of fires. The volunteer fire department must specifically list what "firefighting services" will be provided in the "services agreement." A.C.A. §14-272-301(7)(E). If the "services agreements" include providing life saving and medical emergency response services, A.C.A. § 14-272-303
specifically authorizes the volunteer fire department to recover the costs of these services from a "nonbeneficiary."
If an individual lives within the district the fire department serves and either has failed to execute a "services agreement" or is delinquent on the payment required for a "services agreement," the individual could be a "nonbeneficiary" who may be charged for services provided by the department. If the individual lives outside the area served by the department, in my opinion he or she may not fall within the definition of a "nonbeneficiary." The General Assembly appears to have limited "nonbeneficiaries" to individuals who own property within the area "recognized" as served by the volunteer fire department. See A.C.A. §14-272-301(6). As noted above, the Quorum Court may delineate by ordinance the area a volunteer fire department will serve. A.C.A. §14-20-108(b). This authority to determine geographic limitations on a volunteer fire department was not changed by A.C.A. §§ 14-272-301
through-304. Because code sections that relate to the same subject matter will be read together, Short, supra, in my opinion, the geographic area *Page 8 
which a fire department serves as defined by Quorum Court under A.C.A. §14-20-108 is the area that is recognized as property to which a fire department is capable of providing firefighting services under A.C.A. §§14-272-301 through-304. Therefore, individuals who live outside the area served by the department are in all likelihood not "nonbeneficiaries" under the applicable definition. As a consequence, in my opinion these persons may not be charged for services rendered.
If a volunteer fire department utilizing fire services agreements provides "firefighting services" in response to a medical emergency call for a "nonbeneficiary," A.C.A. § 14-272-303 specifically authorizes the volunteer fire department to bill the "nonbeneficiary" for the services provided.
Question Two: If the answer to question #1 is yes, who is responsiblefor the payment of these services? The non-member who may not haverequested the service or the person requesting the service?
With respect to a volunteer fire department that does not employ "services agreements" under A.C.A. § 14-272-301, the question is moot in light of my response to Question One. With respect to a volunteer fire department operating with fire services agreements, a "nonbeneficiary" to whom services are rendered is responsible for the incurred charges.
I note that A.C.A. § 14-272-303 specifically authorizes a volunteer fire department to charge a "nonbeneficiary" for services provided. The language of A.C.A. § 14-272-303(b)(1) authorizes a volunteer fire department to recover its costs if the department "provide[s] firefighting services to a nonbeneficiary." This unambiguous language, in my opinion, means that the person who has received firefighting services would be obligated to pay.
Question Three: Can the fire department charge for the services providedat vehicle accidents?
Based on the same analysis as set forth in Question One, in my opinion generally, "no." As noted in response to Question One, A.C.A. §20-22-901(a) only authorizes volunteer fire departments to respond to reports or emergency calls reporting fires. Additionally, A.C.A. §20-22-901(b) only authorizes volunteer fire departments to charge fees to nonmembers for services rendered in extinguishing fires involving *Page 9 
the property, real or personal, of nonmembers. Therefore, in my opinion, a volunteer fire department is not authorized to charge a fee to nonmembers when responding to a motor vehicle accident because a motor vehicle accident alone is not a report of, or an emergency call reporting a fire.
I note that should the department respond to an emergency call about a motor vehicle accident that involves a fire, the provisions of A.C.A. § 20-22-901(b)(2) would apply. As recounted above, this allows the department to charge up to $500 to nonmembers for responding to and providing services in the event of a fire involving solely personal property.
As noted in response to Question One, if the department has executed "services agreements," services that are provided at the site of a motor vehicle accident could be included as "firefighting services" under A.C.A. § 14-272-303. The services agreement of the department should detail whether services that would be provided at the site of a motor vehicle accident are included as "firefighting services" under the agreement. See A.C.A. § 14-272-301(7)(E). If such services are included, a "beneficiary" is entitled to those services without an additional charge. A.C.A. § 14-272-303(a). With respect to a "nonbeneficiary," as noted above A.C.A. § 14-272-303(b) authorizes a volunteer fire department to charge a "nonbeneficiary" for providing "firefighting services." Again, a non-member residing outside the boundaries of the department may not be a "nonbeneficiary" against whom the department may impose charges.
Question Four: Is a volunteer fire department required to respond to 911medical emergencies outside their district or coverage area?
In my opinion, there is no requirement in the Arkansas Code that a volunteer fire department serving an area determined by the quorum court pursuant to A.C.A. § 14-20-108 respond to a report of a 911 medical emergency outside of their coverage area. As described in response to Question One, the duty to respond placed on volunteer fire departments is limited to a duty to respond to reports and notifications concerning fires. See A.C.A. § 20-22-901. As noted in response to Question One, a volunteer fire department not utilizing "services agreements" may not charge a fee for responding to a 911 medical emergency call because there is no duty to respond to such a call under A.C.A. § 20-22-901(a). *Page 10 
With respect to a volunteer fire department that has executed firefighting services agreements, there is no expansion of the duty to respond in A.C.A. §§ 14-272-301 through-304. The same analysis would, therefore, apply. In my opinion, there is no positive duty set out in A.C.A. §§ 14-272-301 through-304 to respond to emergencies outside of the geographical area that is recognized as served by a volunteer fire department.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General
[1] It is somewhat unclear how this code section interacts with A.C.A. § 14-20-108, which authorizes the county to collect fire department dues under certain circumstances. It appears, however, that A.C.A. §§ 14-272-301
through-304 contemplates that volunteer fire departments employing "services agreements" will be responsible for their own subscription fee collection. See A.C.A. §§ 14-272-303(b)(2) and-304(b) (referring to the initiation of litigation to collect unpaid fees, rather than any tax-related procedures under A.C.A. § 14-20-108); and A.C.A. §14-272-304(c) (authorizing a fire department employing "services agreements" to contract with third parties for "invoicing," and other services relating to assessment, collection, and administration of "service availability fees"). *Page 1